DECISION
Pursuant to a Rhode Island Supreme Court opinion, the Court will reconsider defendant's previously denied motion to suppress drug evidence seized during a routine traffic stop from a vehicle which was in defendant Pena-Lora's possession and control. During the original suppression hearings, the Court precluded defendant from introducing out-of-court statements made by the owner of the vehicle which outlined how the defendant came into possession of the subject vehicle. The Supreme Court found the exclusion of the statements to be error and remanded the case for this Court to revisit the issue of whether the search of the vehicle in possession of the defendant was illegal in the light of the excluded statements.
The parties stipulated to the facts as presented at the previous suppression hearings and the content of the out-of-court statements of the owner of the vehicle.
 FACTS/TRAVEL
In the early morning hours of April 15, 1992, Rhode Island State Troopers Swanberg and Croce pulled over defendant Pena-Lora when he ran a red light. As is standard safety procedure, one trooper approached the driver with routine inquiries while the other approached the passenger-side and trained his flashlight on the car interior.
Upon Croce's request, Pena-Lora produced a valid Rhode Island driver's license and the car's registration indicating it was registered to Sonia Lora of Massachusetts. While Croce spoke with Pena-Lora, Trooper Swanberg noticed a partially open plastic bag on the rear passenger floor. From his vantage point, Swanberg discerned what appeared to be several mounded packages wrapped in white paper and duct tape. The trooper had seen this kind of packaging before and he recognized it as a type sometimes used in drug trafficking.
After Swanberg alerted Croce to his discovery, the troopers Mirandized Pena-Lora and seized the bag. Upon further inspection, Croce found that two of the packages contained a powdery substance resembling cocaine. Later that morning, a field test revealed the presence of cocaine in both packages, which was later confirmed by the State Toxicology Lab. Defendant Pena-Lora was charged with one count of possession of more than one kilogram of cocaine.
In February of 1996, the defendant, at his first suppression hearing, testified that he was driving the car with the owner's permission stating that the owner, Sonia Lora, called him earlier that evening explaining that her car was broken down and asking him to pick it up and fix it for her. Without any corroborating evidence from Sonia Lora, the Court found the defendant's testimony not credible and found that he did not have standing to object to the legality of the search and denied his motion.
The trial proceeded through the first day when the Court granted the defendant's motion to pass in light of the discovery of the whereabouts of Sonia, who might substantiate defendant's testimony given at the suppression hearing. However, she refused to testify at the second suppression hearing, choosing to invoke her privilege against self-incrimination. The defendant attempted to introduce the transcript of her out-of-court statements made to the investigating officers, but the Court considered them inadmissible hearsay and again denied the defendant's motion to suppress. The trial proceeded through completion and, having been found guilty, the defendant was given a 25 year suspended sentence.
Defendant Pena-Lora's version of how he came to be in possession of the Sonia Lora vehicle was that he received a call in the middle of the night from an unidentified women, desperate for help. Bringing his tools with him, he had a friend drive him to the broken-down vehicle of the woman caller. After some failed attempts, he started the vehicle and proceeded to return to his home with his tools in the vehicle. The statements of the vehicle owner, Sonia Lora, appear to support defendant's version of the events which placed him in possession of the vehicle on the night he was stopped. Her statements indicate: that she told defendant where the keys and her registration were in the vehicle; that she never reported the vehicle stolen despite the fact that it was not returned to her; and that she never reclaimed the vehicle, preferring instead to purchase another one in Massachusetts.
The first issue presented is whether defendant had standing to contest the legality of the search on the basis that Sona Lora gave him permission to drive her car which provided the requisite expectation of privacy to establish his standing.
To successfully challenge the legality of a search, the defendant must satisfy the two prongs of the standing inquiry. First, the defendant must show through his conduct that night that he had a subjective expectation of privacy in the area searched. State v. Wright, 558 A.2d 946, 949 (R.I. 1989). Second, the defendant must show that his subjective expectation was objectively reasonable. In evaluating the reasonableness, courts look to possession or ownership of the area searched or property seized, prior use of the area searched or property seized, the ability to control or exclude others' use of the property, and legitimate presence in the area searched. Id.
From the facts as testified to by Pena-Lora, considered along with the statements of the previously excluded statements of the owner which, at the least, suggest that Pena-Lora had permission to retrieve, drive and garage her vehicle, and that he had the requisite subjective expectation of privacy in the vehicle which was objectively reasonable. The Court therefore finds that he had standing to object to the search of the vehicle.
The defendant next argues that the search and seizure were unlawful because the trooper did not have probable cause to associate the packages with illegal activity. As such, the packages were not in plain view and their seizure was unlawful.
"The plain view doctrine allows seizure of evidence that is openly on display when an officer who is lawfully in position to see the evidence and to have lawful access to it, immediately recognizes that the object is evidence of criminality." State v.Pratt, 641 A.2d 732, 738 (R.I. 1994). The defendant concedes (1) that the troopers were lawfully in position to observe the packages, and (2) that the discovery was inadvertent. He argues, however, that the packages were not immediately apparent as evidence of illegal drugs.
Evidence is "immediately apparent" when "there is probable cause to associate the property [in plain view] with criminal activity." State v. Pratt, supra. Probable cause "merely requires that the facts available to the officer `warrant a man of reasonable caution in the belief' . . . that certain items may be contraband or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730 (1983).
The Court finds that Trooper Swanberg clearly had a reasonable belief that the packages contained an illicit substance. From outside the car, he could see the duct-taped packages in the plastic bag. To Swanberg, this distinctive packaging signaled its contents because it was similar to those seized in other officers' drug investigations. Thus, Swanberg did not have to ignore the significance of what he saw. He was entitled to investigate the apparent contraband in his plain view.
Upon reconsideration of the defendant's motion to suppress, the Court finds that he did have standing to contest the search, however, in applying the plain view doctrine, the Court finds that the seizure of the drugs was lawful.
Therefore, the defendant's motion to suppress is denied. The judgment of his conviction for possession of more that one kilogram of cocaine as earlier recorded will stand.